The Illinois Telecourt Third Division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Good morning everyone. Please have a seat. Mathis v. Yildiz Would the counsels who are going to argue the matter please approach the podium and identify yourselves for the record and the party you represent. Good morning. My name is Nick Mathis. I represent the plaintiff. Robert Gilbert on behalf of the D2 Dental of Yildiz. And Susan Fisher on behalf of Dr. Yildiz. Okay. To my understanding the Yildiz have decided to split up the time. Nine and six. Nine and six. So you're nine and you're six? Yes. Okay. Thank you. All right. And then just as a reminder the microphone doesn't amplify so please keep your voices up loud and clear so everybody can hear you. It doesn't record though. All right. Thank you. Thank you. All right. Counsel you ready to proceed? I am. Good morning. May it please the court. I'd like to start this morning with a hypothetical. Let's assume that you are going to a routine dental visit just to get your teeth checked. You walk in, your dentist performs x-rays, comes back into the room with another person's x-ray, shows you that other person's x-ray to fraudulently tell you you've got a cavity between two of your molars. You need to get a crown placed for $600. You take your dentist at their word and get this unnecessary service performed for you incur a cost. In this hypothetical the damage that has been done in paying for that unnecessary service is the exact same damage that would be done if your mechanic had told you that when you brought in your car something unnecessary needed to be done. There is no basis in the statute to distinguish between a dentist that fraudulently procures a service and any of the other professions against which consumer fraud claims have been allowed to proceed. Now, some may say, well, isn't providing unnecessary treatment malpractice? The simple fact that something may also be malpractice is a red herring. Illinois law is well established that the plaintiff is the master of their complaint. The plaintiff can plead as many causes of action as the facts support. If the counsel in your complaint, you allege that the defendants balanced billed the plaintiff, right? Is there a law in Illinois that prevents balanced billing? There is in this case because of the Medicaid regulations which do apply to Chanton's insurer. I think more specifically the allegations in the complaint also establish that the defendants had contractually agreed to be bound by the dorm agreement. And in balanced billing the plaintiff deceptively and fraudulently in excess of what they were allowed to bill under the dorm agreement. This case falls on all fours with false. That's the exact same thing that happened in Falls versus Silver Cross Hospital. So that's a third district case, correct? Correct. So is there any other case law that interprets the Consumer Fraud Act the way the third district has? I think that we need to go back to the statutory text here in order to see what is allowed. And what the statute tells us is it's any fraudulent or deceptive conduct in the procuring of any services. If you know you're not allowed to bill a patient a certain amount and then deceive them and fraudulently bill them for that amount in excess, I think just the plain language of the statute provides recovery under the Consumer Fraud Act. I do not know of a case that more directly answers your question besides false. So how do you reconcile from Feldstein to Kaz, the first district's interpretation? Are you saying we should depart from that? And if so, why? Yes. And I think that the main reason that this Court must depart from those holdings is the plain language of the statute itself. The basis for all of those holdings is a reliance on the abolished public injury rule. The notion has always been with these medical cases that, well, when it's in a medical setting, the plaintiff is alleging a purely private wrong. This isn't the type of thing the Consumer Fraud Act was designed to prevent. And in the 1990 amendment, the legislature dismissed that notion and not amended the statute but clarified the statute that that was never the intent. And I think it's a good example of how a court improperly substituted its public policy notions for that of the legislature. And I'm quoting from Fromm. The interpretation urged by plaintiffs here, however, would necessarily equate the practice of law with an ordinary commercial enterprise, a proposition for which we find no support in case law or public policy. Our legislature decides Illinois public policy and it announces that public policy in enacted statutes. The job of the courts, especially with an unambiguous statute, is to apply that statute as written. A court's public policy judgment cannot judge the plain language of a statute. And also, a court's prior cases should not trump the plain language of a statute. However, this Court must determine whether the term, any services, is ambiguous. That term is not ambiguous. If this Court finds that it's not ambiguous, it must apply the statute as written. Do the words of the Consumer Fraud Act include or exclude dental practices? Yes, they explicitly include dental practices by stating any services. Any means all. In enacting the statute to say any services, the legislature has explicitly included all services, including dental services. And what is your basis for saying going to the dentist is a service? I guess my basis for saying that going to the dentist is a service is just the plain meaning of the word service. I think, you know, a working definition of what a service would be is when someone performs a task for you. I don't know what else a dental, in the trial court they refer to as dental services, a dentist performing work for you and being paid for that work, I think must be considered a service under the plain definition of service. When we talk about the service economy, you know, dental services are included in any federal measure. And I think the plain language includes services. If you were to just ask, you know, 100 people on the street, are dental services services, they would tell you yes. And that's because that's the ordinary and plain meaning of the words. So, you know, going back to the from Feldstein to Kaz line of first district cases, they basically say that the profession of law, medicine and dentistry, but we're focusing here on Kaz dentistry, right, are not ordinary commercial enterprises. That's the wording that they use. In your opinion, is dentistry an ordinary commercial enterprise and also does that phrase appear in the Consumer Fraud Act? That phrase does not appear in the Consumer Fraud Act. Ordinary commercial services as opposed to dental and medical services, that is a court-created distinction. I think when we look to CRIPE and the reason that the Supreme Court differentiated the attorney-client relationship, which what the Supreme Court referred to as merchant-consumer relationships, the basis for doing that is that attorneys are subject to regulation by the Supreme Court. And CRIPE is the only Supreme Court case that addresses law. Is there anything that addresses dentistry? There's not. They're from the Supreme Court. We just have the appellate court cases. And so I think in looking at that CRIPE definition of we have the attorney-client relationship that is regulated by the Supreme Court, then dentistry would be an ordinary commercial relationship because dentists are not regulated exclusively by the Supreme Court. And their patients are consumers under the definition of the Act. The Act defines merchandise in part as any services, and it defines consumers in part as anyone who receives services, and this is an example, receives services or contracts to receive services. Because patients are consumers, you know, you go to the dentist and you get work done, you have to pay for it, or if you're insured, your insurance has to pay for it. These are ordinary commercial transactions, especially when we look at the test that was set forth by the CRIPE court. I think that the case that Senator Bruce Scott versus the Association of Childbirth at Home is an important decision for this case. In that case, the Supreme Court held that purchasers of educational services may be as much in need of protection as our purchases of any other service. So when we go back to that hypothetical that I began with, it's clear that dental consumers, dental patients, are in need of these same protections. You can't see inside of your mouth. Most people do not get a second opinion when they go to the dentist and have relatively routine work recommended, and you're not going to risk not getting work done that a dentist has told you that you need. Where this becomes important is in our hypothetical, if there isn't redress under the Consumer Fraud Act, and you've been defrauded out of $500, what are you going to do about it? You're not going to sue the dentist under malpractice and get a 2622 report, because you're going to lose money on that even if you were to win a trial. These type of smaller fraud claims are exactly why the Consumer Fraud Act provides for attorney's fees and provides for greater cost shifting than would otherwise be allowed so that these smaller claims can be pursued. This is important because the dental industry has a well-documented fraud problem. It's because it's easy to get away with and the risks and consequences are relatively slim. In our brief, we point out that, and this was for medical services generally, more than one-fifth of the money spent by Medicaid programs in 2020 was improperly paid. In Texas, an investigation into orthodontic claims found that at least 90%, 90% of the claims reviewed were not medically necessary. And the Consumer Fraud Act provides a solution to all these problems if it's simply applied as written. And I think that this is a really important gap filler, whereas we explain in our brief, one of the problems with combating fraud is there's just scarce public resources. The Attorney General's Office can't prosecute everything. This is similar to the Nursing Home Care Act claims, where not everything can be subject to regulation. So therefore, the Consumer Fraud Act deputizes, in effect, private attorneys general to bring these actions into force so that aggrieved parties can enforce their own rights. And when we look at the statutory definition of trade and commerce, you know, it says any services. And that phrase is not ambiguous. I think before we go further and really dive into the details of Feldstein, Justice Fantano, which I will get to in a moment, it's important to note that this Court doesn't have occasion to look to any of the rules of statutory construction if the statute is unambiguous, or if the statute is ambiguous, rather. If the statute is ambiguous, it must be applied as written. Counsel, why don't you start summing up, and then we'll give you time for rebuttal. I think that the important thing to note in Feldstein, and in the cases that follow the medical context, is when they say that the practice of medicine is not the equivalent of an ordinary commercial enterprise, in Feldstein that immediately follows a recitation of the public injury rule. In Doe and in Dukas, both of those cases are citing that proposition from Feldstein and are unwittingly applying the public injury rule. We see this again in medical cases where both Ripes and Evanston Hospital expressly applied the public injury rule, even though it had been abolished prior to those cases being decided. In wrapping up here, I think, and going back to that Scott case, the defendant in that case, relying on a previous case, Steinberg, tried to create a bright-line rule exempting all educational services from the Axe Gambit, and the Supreme Court rejected that argument, saying that the sale of educational services were included in any services. In Feldstein and in the older medical consumer fraud cases, they weren't brought by patients. One was brought by a physician against his employer, another was brought by a medical school applicant. Once we recognize that patients are consumers under the Act, there shouldn't be a bright-line rule for any given industry. We just look to whether the services, whether services have been provided. And it's the conflation, I think, of the definition of consumer in these early-standing cases was then transformed into the public injury rule, and then just never, we just never got away from that in our jurisprudence, is why the Consumer Fraud Act has been misapplied in medical cases. I see that I'm getting very close into my time. I'm glad I'm dealing with your time. All right. Thank you very much. All right. Thanks. You didn't ask us if we had any questions, John. I don't have any questions. No, I didn't say a word. I just wanted to say I thought the briefs worked for both sides, and I didn't need the argument, but the briefs are very good, and it's great to have briefs that help us a lot. Thank you very much. Agreed. I don't have so many questions. You don't have any questions? No, not at this point. Thank you. I apologize. That's okay. We said earlier we didn't have any questions, so I didn't ask. All right. I just wanted to ask one thing before you start. I see so many students, or people who look like students. Do we have students here? Yes, we do. We have several students. Okay. Wonderful. Hi, Mr. Ellsworth. I believe you're going first. Thank you. Yes. May it please the Court, my name is Robert Ellsworth. I'm here on behalf of the D2 Dental Defendants, responding on superior claims. But we obviously share the theories and defenses with Dr. Yield-Yees. I want to start first off. It's funny how you never go with your outline immediately, right? His hypothetical misses out on the most important part of this case, really, and frankly the case law that animates why we're here. And that is, he said, you're a patient. You come in, your dentist shows you a falsified X-ray, says it's yours, and then goes off and does these things. That takes no medical judgment on behalf of the dentist. This case, our actual pleadings, not a hypothetical. This case involves specific allegations of medical judgment that are assumptions that Ms. Mathis makes in her pleading without the support of 622. In particular, it really starts, I believe, it's paragraph 17. And that is, essentially says, drilling the tooth, or excuse me, filling the tooth at that time for $58, and I believe six cents would have solved the problem and she would have had no pain. I don't know where Ms. Mathis gets that information. So I think really what's going on here is that's why it's items like that, why 622 exists, and why the rule exists, that if the allegations that are in the consumer fraud count involve professional judgment on behalf of a lawyer, physician, and in our case, the dentist, that's why they can't fit within. She cannot make that allegation and then prove it without an expert opinion. Go ahead. Can't the Consumer Fraud Act apply to the business aspects of dentistry and not the actual practice of dentistry, like the qualifications? Because as all the cases say, the cases like Gadsden, for instance, is really well developed on that, the federal court case. I think it's district court, central district. That one really delineates the difference between the two. It really takes a survey, and that is a case that is 1992, so it's post-amendment. It takes a survey of the law. It's post-1990 amendment, not the 1996 amendment, correct? Yeah. I'm only aware of the 1990 amendment having an effect here. So the 1996 amendment also narrowed it further to clarify. Yes. Yes. But the 92 case, at least, and what I'm saying is the decision was issued post-amendment, but it takes a survey of the professional services aspects that are not subject to claims under the act versus the pure billing, frankly, the word is commercial transactions, contractual issues between two parties. And the Gadsden case comes down on the ladder. It says that's fine from and all you other folks that are sitting over here with your professional, professional mental training sorts of issues that muck it up and require the 622. This is a commercial transaction case. Therefore, the consumer fraud count can stand. That's the distinction that we're talking about. So I'll say again, that distinction was not mentioned in the hypothetical. So that hypothetical doesn't really apply here. I think we should stick to what is pled in the first amendment complaint. Is it your position that a plaintiff can never recover under the Consumer Fraud Act for going to the dentist at all, or do you see any sort of scenario where a plaintiff could? I can only answer that by saying you've got to tell me what happens when she gets to the dentist. If you go in and you purchase some sort of off-the-rack prosthetic device, as opposed to one that was thought about and recommended by the dentist that you become unhappy with later on, I think that those facts would have to be known. Because, again, if the dentist has a habit of double billing me, something like that, even if the treatment is not the basis for the double billing, if there's nothing about the treatment that goes into the double billing, it's just a habit of double billing me, could that be consumer fraud? I suppose. Because it doesn't involve the dentist making a decision as to whether, in our case here, tooth 19 needs to be drilled, whether it doesn't need to be drilled, whether it can just be filled. Those are professional judgments that I don't know anything about. I'm not sure anybody in this courtroom knows anything about. That's why the professional judgment is the well-recognized, from the Supreme Court on down, exception for professional services. And that takes me, actually, to the Cripe matter. We hear arguments earlier about the plain language. The plain language argument is settled by Cripe. The Supreme Court reviewed the plain language of this act and came to the conclusion that it does not, at least the Cripe case is a lawyer case, I'll grant that, but it specifically holds that the professional service of attorney services are not subject to cases under the act. That's clear. And, in fact, the Supreme Court says it's kind of astonishing how clear that rule is. And so one of the cases that the Supreme Court cites for that is Fromm, right? And if you go and you read Fromm, Fromm goes from the United States Supreme Court to the district or, excuse me, the appellate courts of Illinois to also find that language. And the Supreme Court of the United States says it would be unrealistic to view the practice of professions, professions, not just lawyers that were at issue in that case, as interchangeable with other business activities. This is a well-rounded, fully developed thought process on these sorts of Consumer Fraud Act causes of action. So how does the Consumer Fraud Act define trade and commerce? I don't know the definition off the top of my head, but I can answer that by saying it does not include professional services. I mean, the case law that has looked at it and defined that term in the common law, there's no distinction among any of the cases. And it doesn't? Mr. Mathis is asking you to defer. Counsel, it doesn't disclude professional services either, right? It does not specifically include or exclude. I would say that that is true. But, again, I'll fall back to the Illinois Supreme Court that says the plain language does not include these sort of professional services. The plain language in our statute saying description, or I should say distribution of any services, so doesn't that fall underneath professional services as well? I mean, right at the outset it says distribution of any services. Your Honor, with all due respect, the last word on that, to the extent that it exists in the State of Illinois, is the Illinois Supreme Court in the Cripe case. I don't know how else to answer that. I mean, could I make an argument otherwise? I don't think even the law students back here could make that argument. But the answer has already been given to us, and that is from the Supreme Court. It doesn't include at the very least the professional services of a lawyer. I think it's reasonable to have attached that thereafter to physicians and dentists. And some of it, the physicians were already attached to it even before the Cripe case. So I guess moving on then from, which is frankly what Mathis sees to be a boogeyman here, there are three pages of long discussion about this professional services exception, or excuse me, that professional services are not subject to claims under the Act. Mathis has latched on to, quite literally, the last substantive paragraph of that opinion that begins with the word, lastly. And lastly, to me, tells me, oh, and by the way, here's another reason why we don't think that this dental services should be subject to claims under the Act. And that is the single paragraph where the public injury rule is discussed. But those three pages lead, and then they conclude, saying, therefore, for all these reasons, we find that dental services are not subject to the Act. So that leads us up to Tekaz, right? And Tekaz, if I'm pronouncing it correctly, I don't know. I wish somebody else would say it more so I could understand. But the Tekaz case doesn't even use the word public. As far as I can tell. I've read it a bunch of times in the past few weeks. I don't think it uses the word public. Yet here we are having to defend arguments or argue against arguments that say that's all it's based on. Nothing thereafter in Tekaz mentions anything about it. Nobody's concerned about it anymore, frankly, because the amendment had taken it out of, to the degree, as I wrote it, to the degree it was ever an element. It's now been taken out. So, again, let's sort of... Taken out as an element of showing public injury. Right. No longer needs to show public injury. Right. That's the, that's what, so why discuss it? So Tekaz doesn't bother with it. Unless it's a separate issue than public policy, right? Yes. Right. Yeah. I mean, that dispute, even, you guys, we've all read those, there's a, there were pitched battles about whether it was necessary before the amendment. And the amendment ended the inquiry, except for maybe some related, whatever it might have been, right? But that, that ended the inquiry. There was no reason anymore to even discuss it. So how in the world could it have been animated, the Tekaz decision? I don't see that it does. I frankly don't think it does. All right. You might want to start summing up your arguments here. Okay. I want to get to one thing, and that's on the balance billing. The false case is the real reliance here. And I think that it's important to talk about the false case, what's really going on there. In the false case, the hospital has a contract with the PPO, right? And it says, if one of my insurance comes in, I'm going to give you a reduced amount. So in the instance there, it was $18,000 of total money, but the PPO offers them $5,600, something like that. And through machinations things, but at the same time, the consent form says, we won't force balance billing, what could be called balance billing on you, balance billing on you. Then in two spots it says, we can assert a lien for the balance bill. Then it also says we can reject the insurance money and just get the entire $18,000. Right? So this is rote behavior on behalf of the hospital. They put the same consent form in front of every patient who comes in without, there's no reasonable medical judgment going on at all. It is rote behavior by the, so frankly in that case, which by the way was a 615 decision, not a 619. 615 decision says they pled by simply comparing the two contracts and the conflict and the way the hospital is frankly exploiting it, that states a claimant of consumer fraud act. It has nothing to do with the medical judgment that paragraph 17 in Ms. Mathis' complaint and some that follow, and those are mentioned in the briefs, has nothing to do with medical judgment. That's why the false case, while it sounds like it fits, it simply doesn't. But they still use the Illinois Consumer Fraud Act. Absolutely. That's the third district case that was spoken of earlier. Yes. Sum up please. Sure. The long and short of this to me is really the stare decisis discussion that I started my brief with. What we're talking about here is a revolution. If we were to have, we would have an opinion that throws cause aside, or at least actively disagrees with it. There would be a line of motions to amend complaints at the daily center, right? I mean this would be really something, and it would have specific impact on any number of things, including probably the professional insurance industry. I think that we really need to look at, to cause case, the special concurrence, where I believe it was Justice Greeman said. Greiman. Hey, Greiman, sorry. Thank you for at least you know how to pronounce that name. Hey, I don't like this law, but stare decisis requires me to vote the way that I did, and that's the way it was. Thank you, Greiman. Thank you. Thank you. Thank you. Good morning. Good morning, Your Honor. Susan Frischer here, representing the Defendant, Dr. Yildiz. So listening to what the appellant was saying before, I'm switching up the way I was going to present as well. He discussed how the situation that his client is in right now is similar to the Nursing Home Care Act, and that the Nursing Home Care Act is similar to the Consumer Fraud Act, and that's the way that we should apply these facts to the law. But the thing is, is that the Nursing Home Care Act specifically is for not the actions of the medical personnel who are making decisions for the patients. The Nursing Care Home Act is for the employees of the nursing home who are there to protect the patient, to make sure the patient has what they need for their daily life and they can enjoy it, they can get up and read if that's what they want to do, they can go outside, and they're there to protect the patients from falling, from getting sores, things like that. The Nursing Home Care Act does not apply when a doctor comes in and says, this is a fall patient, in order to not have this patient fall, my recommendation and my medical opinion is the only way we can prevent that is by putting on restraints. So there's a difference. And it also applies to this Fraud Act. With the fraud, we talk about commerce and trade and consumers. Those things and those various actions that the consumers are doing when they get into like a retail store, a car dealership, things like that, they're dealing with people who use different sets of skills than people in the professions of law, dentistry, and medical. And based on that, just making a statement that something is a fraud action, as the appellant does, does not bring up the reasons to ignore the facts, or rather make up the facts or versions of events so that it fits into the fraud. Here we have, as the other two attorneys have stated, we have a situation where we're dealing with a medical professional, a dentist, who did make up the care plan, the treatment plan, but that was based on her medical knowledge. She wasn't looking at the teeth going, okay, that tooth is worth $500. So $500 lets me do this. She was looking at the tooth and saying, that tooth has enough deterioration where I believe I need to go in and drill so that we can get to the healthy tooth, or however dentists do it. And she marked that on the treatment plan, and the prices were already there. Irrespective of her expertise in assessing what is needed, if before starting anything she had represented or he had represented to the patient, this is how much it's going to cost, and Medicaid is going to cover it. And then once she's in the chair, decides after that first procedure or in the middle of that procedure, decides, okay, it's not going to cover it, but I've done some work, but you can cover the rest of it if you want me to keep going. That's not necessarily medical judgment, is it? It's more of a representation of what was going to be covered and what wasn't, and then kind of changing in the middle. I think that it's a blurred area, what you're talking about, because we see this happen with doctors as well. So the doctor looks at an x-ray, the dentist looks at the x-ray, right? And this is what she's basing her first estimate on, what it's going to cost, okay? So the cost is based on whatever schedule the dentist clinic has. And she looks at the x-ray, she uses her judgment to see what's on the x-ray, and then she can put it into the billing aspect of it. But she's still using her judgment. But once she gets in there and starts working on the tooth, then she discovers that the information that she had on the x-ray didn't show her everything. So once she's drilling and she needs to do the work that's important to get the tooth healthy, she may need to shift her judgment a little bit, kind of like a surgeon goes in, and they say, okay, this is what we believe is going to happen, this is what we're going to do. But once I get in there, there may be things hidden that I don't see on the x-rays, on the CT scans. It's the same type of thing. Once those medical professionals get into the area that they're dealing with, sometimes their judgment jumps in. And even though they believed that the billing would go a certain way or the treatment would go a certain way, once they get in there, they have to use their medical judgment and deal with what's in front of them. So I believe that even in the situation that Your Honor presents to us, there is that judgment aspect, that knowledge, the skill that comes in. And they realize that I know I told the patient this, but it looks a lot worse than what I thought it was going to be because of what I had to base my judgment on. Were there any other questions? Anything else? No. Any other questions? No. No? No. Thank you. Okay. Thank you, counsel. Goodbye. May it please the Court. I think a really important place to start off here, in responding to some of the defendant's arguments, is distinguishing between a 2619 motion and a 2615 motion. Alleging fraudulent conduct in the course of trading commerce is part of my prima facie case. It's one of the allegations I need to make in order to allege a consumer fraud claim. Here the trial court found that I had done that generally, but then said, oh, there's this other element that conduct can't be part of, inexplicably intertwined, I believe was her language, with the practice of medicine. Where the rubber really meets the road on this is on this 2622 argument. The notion that this court could ignore some of my allegations pursuant to an affirmative defense in order to judge the sufficiency of my complaint, that is the definition of hybrid motion practice. A 2619 motion, which is what would need to be filed to assert a 2622 defense, admits the legal sufficiency of my complaint. That in and of itself is admitted, adequately alleged, conduct within trading commerce. The line of cases we have where 2619 motions are being granted because plaintiff didn't plead a prima facie case, like you see in Caz, it just doesn't make any sense. Because if plaintiff didn't plead a case, that should be a 2615 motion. There is an affirmative defense outside of the statute that exempts medical malpractice. When we're talking about judgment, and we've talked about this in the case where the dentists are regulated by the Illinois Department of Financial Regulation, mechanics exercise judgment, so do plumbers, so do a whole host of other professions that are subject to liability under the Act. There's no articulable basis, especially within the statute, to exempt medical malpractice, medical judgment, dental judgment, from the judgment involved in all of these other industries. When we look at then this 2622 defense, I think it's important to note that Destiny has never raised a 2622 defense at any time. ULDs, Dr. ULDs now raises it in her brief, but it was waived because it wasn't before the trial court with respect to the first amended complaint. In respect with dismissing our original complaint, which is not an issue here, the trial court held that 2622 would not apply to consumer fraud act claims because they were statutory. I bring this up just that it's unfair to now litigate the 2622 issue that was forfeited because we could have cured that allegation if that was a basis for a dismissal of the complaint. Do you draw a distinction, distinguish, do you distinguish between the business aspects of dentistry versus the actual practice of dentistry? So the actual practice, and if there's say negligence claimed, clearly needs a 2622 affidavit. But if, is there a way that you would be or that you are pleading in such a way that it would fall under the business aspect of dentistry? I guess I'll answer that question in a couple parts. First, with respect to 2622, my position is that a 2622 is never required to support consumer fraud claims for the same reasons that a 2622 is never required to support a Nursing Home Care Act claim, and that it's just a remedial statute that's designed to encourage litigation. With respect to the Nursing Home Care Act, who you can sue under that act is defined by the statute itself, and it's the administrator or the owner of the nursing home. If you bring common law accounts, which often happens in a wrongful death case, a 2622 is required because it's a statutory action. I think when we're looking at the actual allegations we've made, we have an alleged medical malpractice for the reasons that, when we argue why 2622 doesn't apply in the Collins case, we talk about that the nature of any defense does not change the character of the allegations the plaintiff makes. Here, we allege that the drilling was without medical purpose, and that allegation must be taken as true. The fact that Dr. Yildiz may now come in later and defend that and say, which is intentional fraud. We see the same thing happening with respect to a couple other cases where, with the psychotherapy act, you have to prove that it wasn't within normal medical treatment to touch in. Or in the cases cited in my brief, where I talk about just because it might talk about some medical judgment somewhere, that doesn't mean that 2622 applies. The Supreme Court, in the sexual assault case that is cited in our brief, said that intentional criminal conduct does not arise out of medical malpractice, even if it occurs in a medical setting. That was a case in which the patient was sexually assaulted while she was sedated by her physician. When we look at the statutory action, all of these extrinsic considerations are largely irrelevant to what does the statute say. That is what this court must decide, and it applies to any services. It must be applied as written, unless this court finds that it's ambiguous for some reason. Craig did not resolve this issue and does not say the statute is ambiguous. That separation of powers case says, well, it doesn't explicitly say attorneys are within the act. It doesn't specifically say they're outside of it. Because we, as the Supreme Court, regulate attorneys and are the exclusive authority for regulating attorneys, we think the legislature would have explicitly said that if they were going to step on our toes in that manner. The dissent points out that he's not as concerned as his followers are with an encroachment on the court's authority. This case with attorneys is a departure from the ordinary rules of statutory construction because of the separation of powers issues that are at play when officers of the court are being regulated by statute. That's not really an issue we need to get into here, obviously, because dentists and physicians are not regulated by the Supreme Court, and nearly all of the professions in Illinois are regulated by agencies that do not have exclusive authority. And I think that's important, that any agency that's regulating a profession has to have an enabling statute that gives them that authority from the legislature. That's a fundamentally different question when there's an exclusive authority in a completely separate branch of government. All right, Counselor, you might want to wrap up. I think in wrapping up, we live in a time where society is getting increasingly polarized, misinformation is rampant, and it's hard for many of us to determine what is true, and there is a skepticism in our society towards our institutions, and a skepticism towards our institutions is dangerous. Offering opinions that state that a statute that says any services doesn't include dental services is the kind of opinion that leads to more skepticism, and I think is dangerous in a time when we need our courts to be the arbiters of truth. Here, we've got the Winger case cited in my brief where, look, if it's a statutory cause of action, you apply it as written. The courts can't invent new elements based on their own orderly ideas of public policy. The question presented to this court is, are dental services included in any services? And the answer is, yes, they must be because any services means any services. Thank you very much. Thank you. I want to thank counsels for providing us with a very interesting case with some very interesting issues. This court will take this matter under advisement and will take a short recess to set for the next matter.